# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

**CAROLYN B. KILGORE**                                              **PLAINTIFF**

**VS.**                                               **CASE NO.: 2:05-CV-072**

**JOHN C. GLASS, et al.**                                          **DEFENDANTS**

## <u>MEMORANDUM OPINION</u>

This action was brought by the plaintiff, Carolyn Kilgore, to recover personal injury damages against Defendants, John C. Glass and Crain Automotive, Inc., d/b/a Kargo Automotive Warehouse, Kargo, Inc., and Karpro.  A bench trial was commenced on February 4, 2007. The Court, having reviewed submitted briefs and testimony at trial, is of the following opinion:

### Findings of Fact

On September 4, 2003, at approximately 11:30 A.M., Carolyn Kilgore's vehicle was struck from behind by a truck operated by the Defendant, John Glass, while acting within the course and scope of his employment with the Defendant Crain Automotive, Inc. Kilgore's driver's seat was broken as a result of the accident, and her automobile was totally destroyed.  Kilgore was wearing her seat belt.  Following the collision, Kilgore was taken by ambulance to the Tri-Lakes Medical Center Emergency Room to undergo treatment for her injuries.   Kilgore testified she blacked out, she lost her glasses, a knot appeared on her elbow, she suffered a severe headache, glass was removed from her forehead, and her back was hurting.  Furthermore, she complained of left hip pain, back pain, left arm pain, and  burning pain in her neck and shoulder.

Kilgore continued to have pain in her neck, back, arm, hip, and left shoulder.  Also, because her headaches did not improve, she visited her family physician, Dr. Joseph S. Messina, a board

certified physician in internal medicine practicing in Grenada, Mississippi. Dr. Messina saw Kilgore in his clinic for treatment related to the collision on the following dates: September 9, 2003; September 12, 2003; September 23, 2003; October 21, 2003; February 24, 2004; April 29, 2004; June 17, 2004; August 3, 2004; and March 23, 2005.

Because these visits are necessary for analyzing the degree of injury resulting from the collision with Crain, the Court will now outline pertinent information from Dr. Messina's testimony and Kilgore's medical records.

On her September 9, 2003, visit, Kilgore stated that she continued to have headaches four to six times a day. Kilgore informed Dr. Messina that she continued to have pain and burning sensations in her neck and left shoulder, as well as a sharp burning pain radiating down her left hip. Dr. Messina testified as of this date, Kilgore exhibited mild decreased range of motion to the left and decreased extension of the head due to the pain. Moreover, he stated she exhibited a red contusion in the left thoracic area of spine that when palpated, would radiate pain up to the neck with tenderness of the cervical spine down to the thoracic spine. Kilgore had full range of motion of the elbow but had pain and tenderness to palpation over the elbow area. Dr. Messina's diagnosis included left hip pain, cervical pain, back pain, left elbow pain, and an onset of headaches, all of which, he noted, were secondary to the automobile accident. Dr. Messina recommended she take an over-the-counter ibuprofen medication to be taken three times a day and prescribed Medrol, a muscle relaxer to be taken four times a day.

Dr. Messina also ordered Kilgore to be x-rayed. Kilgore's neck, on September 9, 2003, revealed degenerative disc disease. Specifically, the x-ray showed a slight narrowing of the disc at the C5-6 level.

On September 12, 2003, Kilgore reported to Dr. Messina that she was still having headaches and also pain in the back and neck. She complained of soreness in her shoulder and stiffness in her back and shoulder. Dr. Messina diagnosed her with pain and soreness to her thoracic spine upon palpation. Also, she had pain and soreness of the cervical spine that radiated into her head on palpation. Dr. Messina reported no numbness or tingling down her left lower extremity. Dr. Messina then ordered an MRI of Kilgore's cervical spine due to her unresolved complaints of neck pain. However, Kilgore did not undertake the MRI. She contended the MRI was not taken until June 7, 2004, because Dr. Messina's office failed to contact her insurance office for pre-certification and approval by her insurance carrier.

In the interim, Kilgore was involved in another automobile accident approximately twenty days after the accident with Crain. Plaintiff was turning left across Highway 6 into a restaurant and her vehicle was hit on the passenger side near the front tire and fender. Plaintiff did not seek treatment from any physicians. She testified she was not hurt in the accident, and she drove the vehicle home after the accident.

At Kilgore's next visit with Dr. Messina on October 21, 2003, she continued to complain of left shoulder and neck pain. She described the shoulder pain as a burning sensation. In addition, she stated she experienced soreness in the left upper neck and trapeze. Dr. Messina diagnosed her with pain and tenderness to palpation in the left neck and over the trapeze muscle on the left side.

On February 24, 2004, Kilgore again visited Dr. Messina with complaints of left shoulder and neck pain. She stated that nothing seemed to help her symptoms. Dr. Messina diagnosed her with pain and tenderness in her left neck, behind the left ear, and into the trapeze muscle.

On April 29, 2004, Kilgore visited Dr. Messina for a regular office visit regarding her

diabetes.  The medical reports indicate she reported a fall several days earlier in a Wal-Mart parking lot in which she cut her hand.  She also complained of shoulder pain.  Kilgore testified she did not fall to the ground but merely tripped and caught herself on the tailgate of her truck.

That same visit, she complained of tenderness over the left neck and upper trapeze muscle over the top collarbone area.  She also complained of pain radiating down the left arm.  Dr. Messina noted that she had full range of motion in her neck.

On May 11, 2004, Kilgore complained that she felt something "pop" in her pelvis when she was turning her invalid mother.

On June 17, 2004, Kilgore stated to Dr. Messina that she was developing numbness and some weakness in her left upper extremity.

Kilgore complained to Dr. Messina of pain all over during the visit of August 3, 2004.  Specifically, she mentioned left shoulder pain and some cervical tenderness.  At that time, Dr. Messina felt she was suffering from fibromyalgia, a condition possibly resulting from a lack of restful sleep due to a chronic pain condition.  Dr. Messina prescribed an anti-inflammatory drug called Bextra and also Elavil to help her rest.

On March 23, 2005, Kilgore explained to Dr. Messina that she continued to have left shoulder pain.  Dr. Messina reviewed the results of an MRI taken on June 7, 2004, and diagnosed her with two herniated/ruptured cervical discs at the C4-5 and C5-6 levels and shoulder pain which were all secondary to the motor vehicle accident with Crain.   Further, Dr. Messina concluded that her back pain was resolved, but her headaches were persistent.  Kilgore's left elbow hematoma had resolved, but the herniated cervical discs were still present and needed surgical intervention.

Dr. Messina's medical opinion, based on the history he obtained from Kilgore's

examinations, findings, and treatments, is that her conditions were, to a reasonable degree of medical probability, related to the motor vehicle collision that occurred on September 4, 2003.

At trial, Dr. Messina testified that activities such as lifting her mother, gardening, sweeping, mopping, bending, and stooping could exacerbate pain if the C4-5 and C5-6 were ruptured. He also testified that mild degenerative changes would not cause a burning sensation in the neck radiating down arm and shoulder.

Dr. Messina referred Kilgore to Dr. Thomas L. Windham, a board certified neurosurgeon, to evaluate whether surgical removal of the discs was needed to alleviate her neck pain. On July 2, 2004, Dr. Windham diagnosed Kilgore with mild loss of neck motion with slight posterior lateral tenderness. He also noted that she had a full range of motion of her shoulder and noted that it was non-tender. He further testified that Kilgore had some numbness in her hands. Thus, Dr. Windham recommended she undergo nerve blocks to alleviate the pain in her neck. Also, Dr. Windham opined that she was not a surgical candidate. Even though recommended by Dr. Windham, Kilgore decided against undergoing the nerve block procedure.

Dr. Windham later testified by deposition that a long ride, yard work, or any number of things could exacerbate the pain. Further, Dr. Windham agreed that the ruptured discs and her pain and discomfort were causally related to the accident.

On May 19, 2005, Kilgore was using clippers to trim a tree limb and thereafter developed numbness with tingling in her neck that radiated into her shoulder and down her arm to her elbow.

In that same month, Kilgore decided to visit a chiropractor, Dr. Mack Ballard of Grenada. She told Dr. Ballard that she "experienced neck pain of mild to moderate intensity over the past year and a half" due to a car accident on September 4, 2003, but during the past month developed

numbness with tingling in the left side of her neck that radiated into the left shoulder and down the arm to the elbow region. She claimed this pain resulted from May 19, 2005, after using a cutter to trim some tree limbs. After evaluating the patient, her MRI, and x-ray, Dr. Ballard diagnosed her as having a cervical disc displacement/herniation, cervical radicular root, compression, cervical myelopathy, cervical segmental dysfunction/subluxation, and thoracic pain. Dr. Ballard then explained to Kilgore that if his treatment did not treat her symptoms, surgery may be needed. Kilgore opted for the conservative treatment plan administered by Dr. Ballard who, in turn, administered sixteen visits with Kilgore between May 26, 2005, and September 1, 2005. During one of their first consultations on June 2, 2005, Kilgore indicated that she had pain and stiffness in both sides of her neck and the left side of her upper back. Dr. Ballard diagnosed her with diminished right of cervical movement, muscle spasms, and tenderness in middle and cervical areas.

In sum, Dr. Ballard opined that the cervical problems were causally related to the motor vehicle accident. Therefore, Dr. Ballard, unable to cure her problems, recommended that she seek the opinion of a neurosurgeon.

In September of 2005, Dr. Messina referred Kilgore to Dr. Lynn Stringer, a neurosurgeon in Jackson, Mississippi, to obtain a second opinion as to whether she might benefit from surgical removal of the ruptured cervical discs.

Kilgore visited Dr. Stringer on October 14, 2005, and complained of neck and left shoulder pain. Dr. Stringer found that she had a very immobile neck with a limited range of motion. Further, Dr. Stringer stated when Kilgore would look up, she experienced pain in her neck and left shoulder. When she would look up and over to the left, she would have pain in the side of her spine. Dr. Stringer also noted that she had very restrictive range of motion of her left shoulder. After

examining the MRI, Dr. Stringer further diagnosed her with significant disc problems, both at C4-5 and at C5-6, that were causing pressure on the nerves going into the left shoulder. Dr. Stringer additionally concluded that she had spondylosis at C5-6 and she had something "going on" inside her left shoulder joint that was also giving her trouble.

Dr. Stringer performed another MRI and noted that nothing had changed in the disc protrusion since the June 7, 2004, MRI. Further, Dr. Stringer stated that the structural changes for which he recommended surgery were present in the scan of June of 2004. Dr. Stringer then examined Kilgore and recommended that she undergo surgery to remove the large herniated cervical discs. On October 18, 2005, Dr. Stringer performed the surgical procedure upon Kilgore at the River Oaks Hospital in Jackson, Mississippi. Dr. Stringer opined that post-surgery she would have an impairment around fifteen percent of the neck to the body as a whole.

Dr. Stringer concluded that the ruptured discs were causally related to the motor vehicle collision on September 4, 2003.

Thus, all of Kilgore's treating physicians, Dr. Messina, Dr. Windham, Dr. Ballard, and Dr. Stringer, testified Kilgore's injuries were causally related to the motor vehicle collision which occurred on September 4, 2003.

Prior to the collision on September 4, 2003, Kilgore was in good health, and her physical abilities were unrestricted. Mrs. Lena Tillman Hudson, a co-worker of Kilgore, testified that before September of 2004, Kilgore never complained of any pain or discomfort in her neck, back, or left arm. Following the collision, Mrs. Hudson testified that Kilgore often complained of pain and discomfort in her neck and left shoulder. Further, Mrs. Hudson noted, post-accident, Kilgore moved slowly, was unable to lift books, and had illegible handwriting. Mrs. Hudson also stated Kilgore's

complaints continued consistently between September 4, 2003, and October 18, 2005, the date of her surgery.

Further testimony, elicited from the Plaintiff, evidenced additional complications from the collision. Kilgore testified that she had much difficulty sleeping. She stated that some days were good, but some were bad. Also, she complained that some nights she could not sleep in a bed or in a recliner, and she would be "dragging" the next day. Further, she bought a new mattress and numerous pillows trying to solve her problem. She claims she endured various degrees of pain from September 4, 2003, until October 18, 2005 (the date of her surgical cervical fusion) in which she was awake on an average of eighteen to nineteen hours a day. In addition, she also gave testimony that she had trouble shampooing her hair and doing household chores. To attempt to alleviate the pain, she testified that she took Tylenol every four hours which amounted to around fifty capsules a week. Kilgore also testified she could not work in flower beds or on her ceramics. Further, in her work as an election commissioner, she had difficulty writing, could not pick up books, and could not help with the machines.

For the five weeks following the surgery, Kilgore had to wear a collar and could not lift. Even after surgery, Kilgore testified she has not resumed use of a chain saw or a tiller because of her immobility. She also stated that her neck stiffens from time to time. However, Kilgore testified she has had no pain since her surgery.

Defendants brought forth expert Jimmy Miller, a neurological surgeon in Greenwood, Mississippi. Dr. Miller testified he thought it significant that on her September 9 and 12 visits to Dr. Messina she had no focal deficits on her neurological exam. Further, he stated that on her September 23 visit, Kilgore had nothing in her neurological exam that was abnormal. Dr. Miller also noted that

the x-rays of September 9, 2003, and June 7, 2004, were the same, and he opined that if the herniated discs were caused by the accident, nine months later at the time of the MRI, more decompression would have been apparent.

Moreover, Dr. Miller's interpretation of Dr. Windham's findings differed from Dr. Stringer's interpretation. Dr. Miller explained that based on physical examinations performed by Dr. Windham, Kilgore had no evidence of myelopathy and no focal nerve root abnormality. She also had normal motion and sensory function, which he concluded did not indicate radiculopathy. Conversely, Dr. Stringer opined that elevated reflexes in the legs compared to the arms indicated early myelopathy. On the other hand, Dr. Miller opined that a paracentral disc extending off the right side prevented the disc from compressing the nerve on the left side to cause a radiculopathy. Therefore, Dr. Miller concluded the radiating pain Kilgore continually complained of was not expressly caused by radiculopathy.

Notably, Dr. Miller testified in his deposition that Kilgore's degenerative change was "abnormally minor" for someone her age. He also conceded significant trauma can make a symptom formerly asymptomatic become symptomatic. But, Dr. Miller agreed the findings on the MRI were consistent with her complaints. He further testified none of the following incidents alone caused her condition: the second automobile accident, falling at Wal-Mart, turning her mother, and using the garden clippers. However, he stated in his opinion these incidents, together with the accident of September 4, 2003, were likely the cause of the wear and tear, or progression of wear and tear over a period of time that eventually necessitated surgery.

In sum, Dr. Miller concluded: 1) Kilgore's degenerative problems in her neck pre-existed the auto accident and 2) the central disc herniations (impinging on the spinal cord) were not medically

or proximately related to the auto accident.

Plaintiff alleges that she sustained severe pain and suffering, mental anguish, and loss of enjoyment of life from September 4, 2003, until October 18, 2005, for a total of 775 days. Additionally, Plaintiff alleges that she suffered pain associated with the surgical procedure between October 18, 2005, and January 18, 2006.

Kilgore incurred total medical expenses of $63,977.84. Plaintiff sustained lost wages in the amount of $560.00.

## Conclusions of Law

The Court has subject matter jurisdiction through diversity of citizenship jurisdiction, 28 U.S.C. §1332. The Plaintiff and the Defendants are completely diverse, and the amount in controversy exceeds the sum or value of $75,000 (Seventy-Five Thousand Dollars), exclusive of interest and costs. Under Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), this Court, sitting in diversity, is obligated to follow the substantive law of the State of Mississippi.

In her complaint, the Plaintiff seeks recovery against the Defendants on a theory of negligence. In order to prevail, the Plaintiff must prove the Defendants owed her a duty, breached that duty, and the Plaintiff suffered damages that were caused from Defendants' breach. Schepens v. City of Long Beach, 924 So.2d 620 (Miss. Ct. App. 2006). The Defendants have conceded the first two elements; therefore, the Court must evaluate the latter two elements.

The plaintiff bears the burden to prove by a preponderance of the evidence that the Defendants' negligence caused the damages sought. Cade v. Walker, 771 So.2d 403, 406 (Miss. Ct. App. 2000). In order to recover, the plaintiff must prove causation in fact and proximate cause.

Glover v. Jackson State Univ., 968 So.2d 1267, 1276 (Miss. 2007). Proximate cause is that "cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." Forbes v. General Motors Corp., 935 So.2d 869, 880 (Miss. 2006) (*quoting* Delahoussaye v. Mary Mahoney's, Inc., 783 So.2d 666, 671 (Miss. 2001)).

Generally, Mississippi courts have held that one who injures another who has a pre-existing condition is liable for the entire damage when no apportionment can be made between the pre-existing condition and the injury caused by the defendant tortfeasor. Brake v. Speed, 605 So.2d 28, 33 (Miss. 1992). Further, "a defendant chargeable with a non-concurrent wrong may be made liable for damages for his part when the damages are such that they may be apportioned, and a portion thereof can be traced with reasonable certainty to the wrong of the defendant as to the cause of that portion." Blizzard v. Fitzsimmons, 10 So.2d 343, 345 (Miss. 1942). Moreover, if another unrelated event giving rise to an injury occurs subsequent to the initial tortfeasor's act, it must be a distinct intervening cause without which the second injury would not have occurred. Brake, 605 So.2d at 32. In other words, this intervening event would break the chain of injury caused by the initial injury that was attributable to the tortfeasor's acts. Thus, a Defendant should not be liable for injuries which the injured person subsequently suffered by a distinct and completely unrelated intervening event.

In the case *sub judice*, the Court finds the following significant:

1) Plaintiff had no complaints of back, neck, and shoulder pain prior to the motor vehicle accident on September 4, 2003;

2) Plaintiff was capable of performing household and outdoor activities before the accident

11

without pain;

3) The impact of the motor vehicle collision was significant and resulted in the car being totally destroyed;

4) Plaintiff had an immediate onset of neck, shoulder, and back pains following the motor vehicle accident;

5) Numerous physicians testified that a symptom that is asymptomatic can become symptomatic with trauma.

6) Plaintiff had a series of treatments and doctor visits with complaints consistent with the type of injury caused by impact;

7) Plaintiff's pain ceased upon removal of ruptured discs and fusion surgery on October 18, 2005;

8) Despite lapses in treatment for significant periods of time, Plaintiff testified that she was never pain-free after the accident until the surgery was performed;

9) Dr. Stringer testified she would have an impairment of fifteen percent of the neck to the body as a whole.

10) Every physician agreed that some degeneration likely existed at the time of the accident.

11) Plaintiff was 59 years old at the time of the accident.

Accordingly, the Court is of the opinion that the motor vehicle collision proximately caused Kilgore's injuries. The Plaintiff began to have a myriad of problems and injuries after the accident on September 4, 2003. Moreover, Kilgore's treating physicians, Drs. Messina, Ballard, Windham, and Stringer, all opined that, to a reasonable degree of medical certainty, her injuries were caused by the motor vehicle accident on September 4, 2003.

Conversely, Defendants' chief argument is that Kilgore's degenerative condition caused her herniated discs. However, Kilgore's treating physicians all opined to a reasonable degree of medical certainty that the herniated discs were not caused by her minor degenerative wear and tear but were caused by the accident on September 4, 2003. Defendants expert, Dr. Miller, even stated her degenerative change was "abnormally minor" for someone her age.

Additionally, Defendants assert that other "incidents" including: the other car accident, the Wal-Mart fall, the pruning incident, and turning her invalid mother, could have caused or contributed to the disc herniation. However, according to Defendants' expert, Dr. Miller, none of these incidents alone caused the injury. Similarly, the Court opines that none of these "incidents" acted as a "distinct intervening cause" that would warrant a break in the chain. While the incidents could have aggravated her condition, the Court is of the opinion the Plaintiff has satisfied its burden that the Defendants' negligence proximately caused Plaintiff's injuries and that her injuries stemmed from the accident on September 4, 2003.

Plaintiff has adequately proved by a preponderance of the evidence that the Defendants' cause of Plaintiff's injuries was a "natural and continuous sequence unbroken by any efficient intervening cause." Forbes, 935 So.2d at 881. The Plaintiff has satisfied her preponderance of the evidence burden, and therefore, is entitled to damages for pain and suffering in the amount of $225,000. All physicians agree Plaintiff had some degenerative change prior to the accident. Accordingly, the Court apportions 75% of Plaintiff's injuries to the Defendants' negligence and 25% to degenerative changes, therefore, reducing the $225,000 award by 25% that was attributable to degenerative changes. Further, the Court is of the opinion that Plaintiff is entitled to $63,977.84 in medical expenses and $560.00 in lost wages. Thus, the Court orders the Defendants to compensate

the Plaintiff in the amount of $168,750.00 for pain and suffering plus $64,977.84 in medical expenses plus $560.00 in lost wages for an aggregate total of $234,287.84.

## Conclusion

Based on the aforementioned proof, Plaintiff has satisfied her burden and proved by a preponderance of the evidence that Defendants' negligence caused the damages incurred by the Plaintiff. Furthermore, 75% is attributable to the Defendants' negligence, and 25% is attributable to the Plaintiff's pre-existing condition. Therefore, Defendants are ordered to compensate the Plaintiff in the amount of $234,287.84.

A final judgment shall be entered in accordance with this opinion.

**SO ORDERED**, this the 20th day of February, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT COURT JUDGE**